Good morning. I'm going to go to the floor. Your division is now in session. Your Honorable Justice, Justice G. Reyes, is now qualified. Thank you. Good morning. Good morning. I'm going to go ahead and have a seat, please. And I'll call the next case. Mayor's Government Associates v. Illinois High School Associates. All right. The counsels have been honored. Mayor, please step forward. Good morning. Good morning. Good morning, Your Honors. Matt Topic for the Appellant Better Government Association. Good morning, Your Honor. Jeff Davids on behalf of School District 230. David Russell on behalf of Illinois High School Associates. All right. And when are you going to argue? I'm going to take ten minutes. He's going to take five. Okay. And then 15 minutes apiece, then you want time for rebuttal? Yes. Could I reserve four, please? I'm sorry?  Sure. Okay. All right. Thank you. Thank you. Go right ahead, Mr. Topic. Good morning again, Your Honors. At issue in this case is the public's right to information about an institution that effectively regulates high school sports in this state and that promotes those sports and that is deeply involved in how those sports are played and the lives of the athletes who play them. There are two independent reasons why the law allows and requires that the information my client sought be produced. The first is that based on IHSA's own words and documents, it qualifies as a subsidiary body under FOIA. Do you agree that Rockford Newspapers, the Rockford Newspapers case, is the appropriate test to determine whether they're a subsidiary body in this case? The test originated with Rockford. It was fleshed out to some extent in Hoppe. I don't think there's anything in those cases that precludes the consideration of other factors, and we've pointed to one additional factor that we think the court could certainly consider if it wanted, and that's the extent to which an entity either enjoys immunities, typically reserved to government, or has sought those immunities. What was it you were looking at? Sorry, we're going to be all over you on that one. No problem. So what was it specifically you were looking for? What, records? Yeah. It was a series of contracts, PR contracts, legal contracts, accounting contracts, and sponsorship contracts. So why didn't you just subpoena them? Well, we don't have any lawsuit against either of these defendants other than this FOIA case. We can't use a subpoena in a FOIA case to get the documents we would want. If there was a pending lawsuit on some other substantive issues, then potentially it could be through a subpoena. Okay. Disregarding your additional one, we'll go back to that, your additional factor you want to look at, if we look at the test from Rockford on the three criteria, and I'm not seeing how you're establishing that they're a subsidiary body, which is our first step in getting the FOIA request, correct? Correct. Okay. Correct. So whether they have a legal existence independent of a government resolution. So they have individual standing to be sued and to sue, correct? We don't dispute that they are a separate legal entity from the member schools. That's one of the three factors. So the nature of the functions performed also doesn't make them a government entity, does it? Well, we think it very much does, and we think that's one of the fundamental errors the trial court made. Education and enhancement of the education experience, which is what IHSA's bylaws describe as what they're all about, those are inherently governmental functions. We cited a case that describes it as a vital governmental function. It's in the Illinois Constitution. One of the cases IHSA cites, the Calumet's decision, page 17 of their brief, the educational process is a broad and comprehensive concept with a variable and indefinite, meaning it is not limited to classroom attendance but includes innumerable separate components such as participation in athletic activity and membership in school clubs. But schools don't have to be a member of IHSA, and they don't have to participate in any of the activities that IHSA provides, correct? Well, that's correct. They're not legally obligated to do that. And no school district could order IHSA to do a specific thing. They could get a member on the board and do it that way, but there's no governmental entity that can direct IHSA, is there? Well, so that's to the factor of governmental control. So there was a big dispute in front of the trial court, and I think continuing now, about the statements, what we say are statements of fact that they claimed in the Hood case about how they operate. We say those are, at the very least, evidentiary admissions that are sufficient to defeat the 619 motion. So why shouldn't they be able to take judicial notice of that? I mean, in the Hood case, they were all over that they were a public entity, right? Correct. So they lost the argument. Well, they lost the argument under certain distinctions, though. Exactly. Right. Exactly, as to the fact that they were not a not-for-profit. But the trial court had held that, yes, they perform a governmental function, and, yes, they are owned and controlled by government. That was not disturbed by the appellate court. So, I mean, you could treat those as judicial admissions. Their argument is that they didn't prevail in that argument, and so, therefore, it's not a judicial admission. So it's only a judicial admission of whether you prevail? Well, at least it's a judicial estoppel as to whether it can be considered as a piece of evidence, which we think it should have been in the 619 motion. It's a party admission. It's a prior statement that they made, and those are far more than just legal arguments. But you could have conflicting statements in different cases. You know, you're a defendant in this one, a plaintiff in this one. Your answer to the complaint could be contradictory, and I'm not aware of anything that precludes them from doing that. Well, then that would be a factual issue that would be resolved at trial and not on a 619 motion. The trial court completely discounted all of the evidence that came from the Hood case, and we think that was one of the big errors, that those should have been considered as evidentiary admissions, which controverted their affidavit, which they claim addressed all the factors, but did not address all the factors. And why don't you come up with a counter-affidavit? Well, it's not necessary for us to rely on a counter-affidavit. We cited case law, including the hard case, which makes clear that you can rely on other evidence, which is what we've done here. We've relied on the bylaws, and we relied on their statements in the Hood case. And it doesn't necessarily need to take the form of a counter-affidavit. Our employees don't necessarily have first-hand knowledge of what all happens. We're relying on their own documents. Do you assume that it might have helped the trial court if you submitted a counter-affidavit? And I'm not sure what that counter-affidavit would necessarily say. I mean, it could, I suppose, repeat what's in those documents and simply say by way of affidavit, these are statements from these documents. But we think it's clear from Rule 619 itself and from the case law that we cited that it doesn't need to be the form of an affidavit. IHSA has never been found to be a subsidiary body. Is that correct? That is correct. Okay. Well, it's never been addressed either way. It's never been found not to be. They talk about a PAC opinion, which I'm happy to address. So the Attorney General issues an opinion, which kind of directs how they govern themselves, is it not? I mean, if the Attorney General gives them a policy opinion saying that you are not a subsidiary body because you don't do this, this, and this, why can't they rely on that? Well, they did not obtain an advisory opinion from the Attorney General on this question. They denied a FOIA request. The requester submitted a request for review. And the Attorney General did not initiate a request for review. They simply said they're a separate nonprofit, so we're not even going to initiate a review. None of the facts that we've brought here, there's not even any indication that the Attorney General was aware of the Hood case or the statements that were made in the Hood case or what's in the bylaws or any of the lengthy arguments that have been put forth in this case. None of those were before the Attorney General, and that's why most of it would be persuasive authority, and we don't think it's persuasive authority. It certainly doesn't immunize them, and to the extent an Attorney General's opinion can immunize anything in a FOIA case, it's simply a finding of whether it's a willful violation, not whether there is a violation. So those are the reasons why we think we've come forward with more than enough evidence to show that they perform a governmental function. Education is clearly a governmental function. I don't think that can really be disputed. And the materials that we saw in the FOIA request relate to those functions that they perform. It relates to- The vendor contracts? How is that a governmental function? Sure. Well, let's take attorney contracts, for example. The IHSA governs all kinds of aspects of competitions, whether a student might be suspended from play, whether a school might be suspended. They are involved in equal access issues, a number of legal issues on which they might get an attorney's opinion on or have an attorney advise them. But these also pertain to public as well as private schools. That's correct. There is a small percentage of schools within IHSA that are private institutions, and what they argued in Hood was the vast majority, something like 80 or 90 percent, are public schools and that they're owned and controlled by those public schools. So while theoretically there could be a scenario where the board is comprised entirely of private schools, that isn't the case. It would be hard to imagine that would be the case because the members are overwhelmingly public schools and they pick the members on the board who ultimately, we have alleged- I thought the members of the board were elected. They were elected within-as I understand it, and counsel can correct me if I'm wrong, but the state is divided into different districts and the member schools in each district decide who to elect. And then I think there's a couple of other at-large spots. There has to be at least one private school representative, and I think underserved communities might be one that is a guaranteed spot or something like that. But overwhelmingly it's public makeup. District 230 responded to your FOIA request saying that they didn't have any documents that you were requesting. So if they don't have it, I'm not really sure where we're going with the lawsuit on that. Sure. So the test under 7.2 of FOIA says that if a private entity is performing a governmental function on behalf of a public body, then those are considered public records of the public body. It's not simply a question of whether District 230 has physical possession right now. If they don't, the statute obligates them to obtain copies of those documents and produce them. Or there was a recent trial court decision in DuPage County where it involved the College of DuPage and the College of DuPage Foundation, and the ultimate remedy was an order against both the foundation and the college under Section 7.2. So to the extent that IHSA wouldn't voluntarily give those records to District 230, the trial court in this case could order that they do that and take jurisdiction over both. Going back to the Rockford case, one of the things that the court pointed out was the percentage of the funding that comes from the private sector as opposed to the public sector. So, I mean, should we take that into consideration here as well? So in the Hopp case, they did take consideration of that, and they found that there wasn't enough funding. I would start by saying it's a factor to consider. It is not the strongest factor. It's not a dispositive factor. And rather, we can see that in the Rockford case, virtually all the funding came from government, and that wasn't enough to make the entity a public body. So in your view, what is the strongest factor? I think it's the nature of the function they're performing is the strongest. And I think the level of control by the government is probably right there behind it. I think it's very core to this to understand that education is a governmental function. And the trial court basically held that because private schools also educate, it's not a governmental function. And we think that's proved wrong. Well, IHSA is not educating. They're running competitions for football or whatever other sport they control. I don't know if chess goes into it. But it's pretty much extracurriculars. I mean, that's not a governmental function, making sure that the football tournament goes correctly. So a couple of responses to that. Not to diminish football participation, but, you know, it's not vital. I fully recognize it's not occurring in the classroom. But a couple of things I would point you to. I mentioned earlier the Calumet's decision, which notes that education is broader than just the classroom. IHSA, I'm going to say the association's bylaws. I like that. I represent the association, too, but I have an easy acronym. The association's bylaws state, participation in such interscholastic activities offers eligible students experiences in an educational setting, which provides enrichment to the educational experience. I would also point out that District 230 cites the Black Laws Dictionary definition of governmental function. And it states, quote, conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law, and that is carried out for the benefit of the general public. Participating in interscholastic competitions is, at the very least, impliedly authorized by law. That's why these schools have been doing it for a long time. They're authorized to do it. They don't have to be required to do it in order for it to be a governmental function. If they're authorized to do it and it benefits the general public, then it's a governmental function. And it does benefit the general public. That's why the Illinois Constitution guarantees public education and talks about the importance of education, because all society benefits from quality education for students. And IHSA itself acknowledges that what it does furthers that goal. And so, therefore, it is a governmental function. Let me just turn to Section 7.2 for a moment. I mean, we think all the factors are in favor in terms of regular subsidiary body, especially given that this is a 619 motion. This wasn't a trial. As to Section 7.2, really the analysis of what is a governmental function is relevant to both of those two different legal bases. But under 7.2, once we've shown that, the only other things we need to show is that it directly relates to that governmental function that's being performed on behalf of the public body. IHSA does what it does on behalf of its members, which are overwhelmingly public. And that includes District 230. When they promulgate rules, you can see in the record a very lengthy constitution that governs all kinds of aspects of competition and things that really do stretch beyond just what occurs on the field or on the chessboard or anywhere else. It has a very deep impact on other aspects of student lives as well. What else they can participate in, what they can do in the off-season, what dietary supplements they can take. It's rather pervasive. And that is done on behalf of District 230 and every other school district. District 230 and every other school district. But there's no governmental requirement that students participate in sports or participate in a certain amount of extra. There's nothing that the government is requiring. This is extra. So how can we now say, well, the government is really not controlling this entity just because they have regulations and a whole slew of things that they have to comply with. How does that suddenly convert it into a governmental function? So the government does many things that it's not legally required to do. It still can do them. If it's authorized by law to do them, there's many things the government does that it doesn't necessarily have to do. But once it does those things, then it's acting as government. Let's go to the documents, as we were looking for. You even mentioned the documents this morning. But the trial court found that the documents really didn't relate to a governmental transaction or regulation. PR contracts. What does that have to do with the model of education and the running of government? Right. So the test is whether it directly relates to the governmental function being performed. Okay. So what other documents that you were looking for pertain to the governmental function here? Sure. So one of the things that IHSA does is it promotes these sports, and it generates interest in these sports, and it holds competitions, and it advertises those competitions, and it earns money from those competitions. And PR firms are part of who does that work, who advises them on how to go about doing that, what to focus on, how they should go about marketing what they do, how they could generate more interest in different sports. They don't even lead the market, though, do they? I mean, if they have a relationship with the schools, they have principals from these other schools in the association, they don't really need to market, right? Well, if that's correct, then all the more reason it would be important to know why they're paying for PR contracts, then. But they're doing it because they're a private entity. Well, if you're a governmental entity, right, you've got a captive audience, you don't need to have public relations out there marketing your events. But if you're a private entity, you do. Well, we do see governmental entities hire PR firms with some level of frequency to advise them on any number of issues. So it is something that government can do as well. But I think what's important to remember is that this is not an instance in which you have like a road contractor who one week might be building a road for the government, and the next week might be building a private parking garage. And we have this directly related component to make sure that FOIA doesn't reach into those documents that relate to some work they do for somebody else other than the government. That's not the case with the association here. Everything they do is for the benefit of the association and to further education. That's all they do. They don't have a side business that only deals with private schools or only does something else. We can look at it in terms of the individual documents, and I think that's something that Romain and the trial court would need to do as to actual documents. I mean, we're talking theoretically and not actually, you know, the actual document. Why did you enter this contract or not? There may be a document-by-document analysis to that question, but I think it's premature to do it at a sort of general level like this. But just to go into the documents, I mean, you're asking for documents, right? So don't they have to be pertinent to the issue if they are deemed a governmental entity? Don't they have to be pertinent to the operation of the governmental entity and not just a fishing expedition? So there is no relevance requirement in FOIA. If you conclude— But here we're trying to determine whether or not it's a private corporation or a governmental entity, right? And if you look at the documents, right, that's what we're looking at. Are these documents related to what a governmental entity would be required to utilize to further the governmental purpose as opposed to a not-for-profit, which they allege that they are, running a business? And if it relates to the governmental function, then under Section 7.2, they're subject to FOIA. And if—alternatively or in addition— if there was ultimately a conclusion that they're a subsidiary body, then all of their records are public records if they relate to the transaction of public business, which sounds very similar to governmental function and may or may not be exactly the same test. We have not gotten to that point with the trial court or otherwise here. But once an entity is a public body, then all of its records that pertain to the transaction of public business that are either in its possession, under its control, prepared by it, under the control of it, or any number of other possible avenues, those are all public records. So there's no—there's not a relevance analysis in terms of why does the public need to have this information. I mean, we think there's a very strong reason why the public should have access to information about an entity like this. But ultimately, it's a question of do they meet what the statute requires or don't they? And we think that they very clearly do. You want to sum up? Sure. So I think the trial court erred on the substantive issue of whether education and things— I think there were procedural errors as to both motions. On the 619 motion, it was not a proper 619 motion. All it did was deny the facts in the complaint. It was not an affirmative matter. Even if it was an affirmative matter, the affidavit did not address all the factors. And even if it did, we came up with plenty of counter evidence that should have defeated the 619 motion. As to the 615 motion, all the facts should have been treated as true and should have been treated as true that they perform a governmental function, and we outlined exactly what that function is. So for those reasons, we think it should be reversed and remanded. Thank you. Thank you. Good morning, Your Honor. Good morning. Please record, counsel. And Your Honor, just a reminder, I'm going to try to take 10 minutes, and I don't know if the light's going to go off at 10 minutes or if you're just going to— The floor is going to drop through. I'm sure there are some judges who wish when I talk that did happen. Your Honor, I think it's interesting that counsel cites to the Kulovitz case, but what he fails to point out is the next sentence, which is talking about the relationship between education and athletics. We do not read the Supreme Court decision in Goss v. Lopez to establish a property interest subject to constitutional protection in each of these separate components. And what the Court is saying there is, while education might be a governmental function, we're not going to say that everything relating to education is a governmental function in that case or is a right. And so following that logic in the Jordan v. O'Fallon case, the Court held the right to education does not include a right to participate in sports. The Courts clearly make a distinction between education and those things which might enhance education. And you even state in your purpose that it's to enhance, enrich education. Your Honor, it's hard to think of a limit to that which might enhance education, and I'll give you a good example. There are work-study programs out there, private employers employing kids for school credit or whatever. Are those private employers now going to be considered subsidiary bodies simply because what they do is enrich the educational experience of the students? Of course not. Now, you know, you might say, well, what did Joey Brown do to earn his credit? No question about that. But when you go beyond that, we haven't now opened that floodgate, and that's really what we have here. So, Your Honor, I really think that, you know, you were talking earlier about the confusion which IHSA, the initials do. I've been working for this organization a long time, and a lot of times people want to put Illinois State High School, you know, or High School State, you know, that they want to confuse the numbers. The fact that it has the word Illinois in it does not make it a state entity. And it is a private entity. This court has recognized that in the Mount Common case. They called it, you called it, a private, voluntary, not-for-profit association. We're not subject to the immunities that a governmental entity typically gets. And so when we talk about could, we didn't get the benefit of those arguments. Because you were considering a local governmental unit. But, Your Honor, if we are a subsidiary body, shouldn't we get the immunities that our parent body gets? It would seem to make sense, but we didn't get it in that case. And, you know, in addition to saying, well, you weren't a corporation, well, I don't think they needed to go there if we had been a subsidiary body of our members. But you opened that door because, in hood, you said that you were. Whether you get what you want all the time is besides the point. You know, you argued that you were a governmental entity. But turning that around, if I'm not successful, I shouldn't be penalized by my argument. But let's look at what the hood court noted. First of all, we didn't get the immunity, okay? And they didn't say, well, you're a subsidiary body and therefore you get the immunity. I find it interesting that in their brief they say, if you argue and obtain the immunity given to governmental entities, you should also be subject to the transparency. We didn't get the immunity. I don't understand that argument, Your Honor. In the hood case, the court said that schools, not government districts, are the members. They made a distinction between the individual schools and the local government entities. Finally, they noted the pervasive involvement of the private schools there, all of which indicate we're not a governmental entity. And if we look at the, but let's look at the factors. I don't think that there is a dispute that there is a separate legal existence. I think that that is conceded here, so I'm not going to belabor that point. Let's look at the nature of the functions. We talked about whether sports is an educational function. It's not. And the court can take notice that a lot of entities provide rules for competition. They oversee competition. That's something that, in fact, if you looked at all of the amateur associations out there and the professional associations, et cetera, there are 50 state associations out there. You know, most have nothing to do with schools. But what a lot of people don't realize is even within schools, there are clubs, et cetera, that are governed not by the Illinois High School Association but by private associations. I don't know if you're familiar with hockey. Hockey is not an IHSA-recognized sport in Illinois. It is governed by USA Hockey, which is a private association. And any school which has a club team doesn't fall under IHSA. We don't go inside the school. We only have to do with competition in those activities which we oversee and regulate. Speaking of regulating, counsel inferred that the members of the governing board are actually selected. They're not really necessarily elected. They are. You reach out and you select the individuals who will get elected. Two things on that point. Number one, they are elected by the representatives of the member schools. The representatives of the member schools are either the principal of the member school or they can designate somebody else as the voting person from that school. They are then elected. They serve independent of their school. And what I mean by that is they don't have to go back to their school and report to say, okay, this is up before the board today. How does the school district want me to vote? They are independent. And as evidence of that, as I mentioned in my brief, we've had people change schools and they retain their position. We also have a legislative commission which has 35 districts, again, voted on by the membership. There's no requirement that they be public or private. Theoretically, they could be private. The city of Chicago is a great example. Overwhelming number of public schools, and yet the representative from the city of Chicago is a private school member from Montgomery High School. So, you know, we could have entirely public school or private school membership. So it's not inherently controlled by a governmental entity or by employees of the governmental entity. Taking it to the next step, the day-to-day operations, the IHSA employs its own staff. It, you know, it owns its own property. It's a registered 501C3 with the Attorney General's office. All of this indicates separate existence, not governmental control. You know, subsequent to the briefing in this case, the Illinois Supreme Court came down with the O2L case talking about the Chicago Zoological Society, holding that that was not a governmental entity. And again, looking at, you know, who controlled the day-to-day operations, the same tests that have been used in noting that there have been, that there are separate employees that are employed by the organization, that it's not the employees of the government who control it, and it's certainly not the governmental entities who control it. You know, these positions were rejected in the Rockford case and the Hoff case. I mean, the Hoff case, to me, is the most significant because there you have the city of Evanston that supplies 50 percent of the membership and supplies the funding, and there they said that that was not a subsidiary body. So, you know, I don't know how we get there. What about the issue about the documents themselves? Counsel argues that actually there's no way of separating these documents from a private institution, not-for-profit 501C3, as opposed to a governmental entity, that actually they're pertinent to running a governmental function. Well, first of all, if we're talking about, you know, Your Honor pointed out before that what we do is we arrange for a competition, and then we have to promote it in order to fund that competition. You know, we talked about in the brief that we have to rent the facilities. If you're familiar with football, you know, we go to Northern Illinois or to Illinois State University or University of Illinois, we have to pay for those facilities. You have to raise money to do those things. Does the government want to pay for those things? So I would say that those are not governmental functions. Raising the sponsorship money to enable us to have those competitions, that's not a governmental function. It's no different from what the NCAA does. NCAA is not a governmental actor. It's no different from Major League Baseball, National Football. I mean, it just goes on and on. Those are not inherent governmental functions. Taking the next step, Your Honor, we get back to whether this is a component of education. A lot of kids don't play sports. Does that mean that they don't have education? It's available to them if they want it. They can do intramural sports. If they choose to do interscholastic competition, it just is more efficient for an organization, and it doesn't have to be the LHSA. It can be any organization to organize those sports. And if they decide to do that, they voluntarily say, we agree to be subject to your rules. No requirement that they do it. And finally, counsel pointed out in his brief that when you look at the school code and all of the functions that are in education, organizing interscholastic athletics is not part of it. So I think I've used up my time. Thank you. Thank you, Your Honor. Good morning again, Your Honors. I'll just be brief, because I think the critical function and the analysis about whether something was a governmental function has been well-argued by the parties thus far. Well, you're in a different position, right? We are. It's a 615, so you essentially conceded that everything was copacetic except the complaint, correct? Except for the conclusions that they draw. I think the conclusion of just stating this is a governmental function is a conclusion of law, and I don't think that has to be admitted as a factual statement. So I think in that respect, we don't admit that it's copacetic as to that point. I think the analysis, and frankly, District 230's big concern here is not even so much the IHSA, it's the scope of that Section 7-2, and what is the appropriate scope of a public body, not just a school district, but any public body, to reach out to a third party with whom it contracts to acquire documents. Now, we recognize that 7-2 is a carefully drawn test, so that in some circumstances, the public body would have that obligation. But the language of 7-2 is narrowly drafted so that in other contexts, they wouldn't have to. So, you know, we've set up what we believe is a five-prong test in our brief, and I won't go through all of those prongs, but I want to highlight two. One is the initial requirement that we're talking about, a public record. When counsel for the BJA recited the test, he recited that it's on behalf of a governmental entity that you're performing a function that's directly related. But there's a critical element in the statute, and that is the statute reads, a public record that is not in the possession of a public body, in other words, that's in someone else's possession, is considered a public record of the public body. So you enter into a contract. Let's say you enter into a contract with the association, right? So don't you have copies of those records? You don't just sign over a contract and then hand it over to a private entity, right? You have an obligation as an institution of learning to make sure that the individuals that you're caring for are cared for properly. And if there's an issue with a contract, don't you have an obligation then to turn over that contract to an entity that's exploring that issue? Sure. A couple of points in response. Number one, I think you're right. Ordinarily, a public body will have a copy of its own contract. I know from representing over 100 public bodies, and we know that that is not always the case. They don't retain it. That's not preferable, obviously. But the second point is what we're talking about here with IHSA is not your standard contract. We're not talking about a school district's contract with a bus company or a school district's contract with an architect to design a school building or a municipality's contract to repair sidewalks. In those cases, we have a very specific contract that applies to probably a particular project or scope of services. And in that case, it's reasonable to expect that if the public body doesn't have that public record, again, the public record that was prepared for it or for its purposes, then it has to go to the contractor and obtain a copy of it. That's not the case in the IHSA. Specifically, the records we're talking about are IHSA corporate contracts for PR services and legal services and so on. Those are not a public record as the term is defined in the statute. We can't just look at Section 7.2 and say, well, it says a public record that's not in our possession and ignore that it uses a defined term. There's a number of cases, and we've cited them in our brief, that say, we need to look at the plain language of the statute, and particularly when the legislature has used a defined term, we have to read the defined term as it is defined. And so the threshold inquiry is, are the records here a public record of District 230? They are not. These are purely IHSA contractual documents. So let's go to the issue of the documents. So they say that they hire public relations firms to promote the games because they want to fill the stadiums. And to promote the welfare of the students that are going to participate in them as well. So why isn't that a public document? If the school is benefiting from this in terms of filling the stadiums and drawing attention, look at what we're doing for our students. We're enhancing their education. So why isn't that a public document? Well, I think if the standard under 7.2 was any document that is entered into for the benefit of the public body, then we might have a different analysis. But I think 7.2 recognizes that public bodies contract with private vendors all the time. And 7.2 is intended to strike a balance. It's not opening the door to every document of every contractor being subject to FOIA. It's saying, if it is a public record of that body and it's in the possession of the contractor, then you've got to get it. And it talks about this directly related standard. So the terminology that's used in 7.2 is saying, look, if it is particular to your governmental function that you're performing for that entity, then that entity has to reach out to the contractor and get the document. But here we don't have that. It's not a public record of the school district. These IHSA documents that we're talking about, at best you could say are generally related to functions that are being performed for the benefit of school districts and private schools. But they're not really on behalf of District 230. These aren't functions that District 230 would perform itself. Take, for example, promoting the IHSA football tournament, the state football tournament. District 230 isn't leading the charge on that. It couldn't. It's a single school district. And furthermore, the records here aren't directly related to the functions that are being performed for District 230, even if there were functions. So we think that 7.2 is trying to strike a balance. It's trying to close a loophole of public bodies not being able to say, well, we don't have the documents you're requesting, and so we're denying your FOIA request. That's a legitimate misuse of FOIA, I think, on behalf of public bodies. And the legislature recognized that, closed the loophole, made clear that in these certain circumstances where it's a public body, where it's a governmental function, where it's performed on behalf of the public body, and where it's directly related to, then you have to go out and obtain a copy of that record and determine whether to disclose it. We think that the BJA's reading of Section 7.2 is more expansive than the legislature intended. It's not what the legislature wrote, and we don't think it's the rule on the FOIA. So for all these reasons, we think the trial court acted appropriately in dismissing your case. Thank you. Thank you. Your Honors, I'll pick up where he left off, and that's this question of a separate public record analysis. Public bodies are already required under Section 3A to produce all public records. Public records is defined as records related to the transaction of public business within their possession, control, prepared by them, prepared for them. So what they're basically doing is saying that 7.2 is redundant, because under Section 3A, if we were able to show this is already a public record of IHSA, or of the district, it's already under their control, we don't even need to get to Section 7.2, because Section 3A requires that the record be disclosed. There's nothing in the legislative history that's been cited or that I'm aware of, there's nothing in the text that says this is limited to closing some kind of loophole. They're arguing that in order for them to get these records, they have to go to the contractor. And that's what the statute requires them to do, and I think was handled very well in the COD case. If the contractor won't turn them over, then you can have an order against both, so that the court can require the contractor to turn the record over if the contractor won't turn it over. 7.2 is adding something more to what was already there, and what is otherwise in the statute, and their read of it would really make Section 7.2 a dead letter, because you would already have an ability to get the record otherwise. And I think just to reiterate the point, this directly relates to, and public records type of talk really has to do with the fact that many contractors do other work that's totally unrelated to the government, and those aren't the facts that we have here. There's nothing that IHSA does that isn't related to its member schools. Just a couple other points, there was some talk, or some arguments I should say, I apologize, from counsel for IHSA about other associations, and no one would argue that the NCAA is a public body, or the zoo in the O'Toole case. None of those cases addressed whether those entities were subject to the Illinois FOIA. So to analogize to those doesn't get anywhere, because there hasn't been a finding that those entities aren't subject to FOIA. So that really doesn't go anywhere. And then in terms of the arguments from District 230 about conclusory allegations about a governmental function, they were not conclusory allegations. They were very specific and detailed about all the various things that IHSA does. We didn't simply say they perform a governmental function. We used the language from the Heard case, and we used the passages from their bylaws to explain exactly how they were a public body, or they performed a public function, and the trial court should have accepted those as true. Thank you. All right. The court wants to thank counsel. It was a well-briefed matter, and while argued, the court will take this under advisement, and we're going to take a very, very short recess.